UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| JOHNNY DALLAS MAPLES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:15-CV-521-PLR-HBG |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure, and the Rules of this Court for a report and recommendation regarding disposition by the District Court of the Plaintiff's Motion for Summary Judgment and Memorandum in Support [Docs. 20 & 21] and the Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 22 & 23]. Johnny Dallas Maples ("the Plaintiff") seeks judicial review of the decision of the Administrative Law Judge ("the ALJ"), the final decision of the Defendant Carolyn W. Colvin, Acting Commissioner of Social Security ("the Commissioner").

On October 25, 2011, the Plaintiff filed an application for disability insurance benefits ("DIB"), claiming a period of disability which began December 14, 2008. [Tr. 66, 139-40]. The Plaintiff's application was granted but with an onset date of June 1, 2011. [Tr. 66, 69-70, 72-74]. The Plaintiff subsequently requested a hearing to contest his onset date. [Tr. 76-77]. On May 30, 2014, a hearing was held before the ALJ to review determination of whether the Plaintiff was disabled from December 14, 2008, through May 31, 2011. [Tr. 29-61]. On May 30, 2014 the ALJ found that the Plaintiff was not disabled. [Tr. 7-24]. The Appeals Council denied the

Plaintiff's request for review [Tr. 1-3]; thus, the decision of the ALJ became the final decision of the Commissioner.

Having exhausted his administrative remedies, the Plaintiff filed a Complaint with this Court on November 23, 2015, seeking judicial review of the Commissioner's final decision under Section 405(g) of the Social Security Act. [Doc. 1]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## I.     ALJ FINDINGS

The ALJ made the following findings:

> 1. The claimant last met the insured status requirements of the Social Security Act on June 30, 2011.
>
> 2. The claimant did not engage in substantial gainful activity during the period from his alleged onset date of December 14, 2008, through May 31, 2011. (20 CFR 404.1571 et seq.).
>
> 3. From December 14, 2008, through May 31, 2011, the claimant had the following severe impairments: borderline intellectual functioning, polysubstance use, bipolar disorder, and anxiety (20 CFR 404.1520(c)).
>
> 4. During the period in question, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> 5. After careful consideration of the entire record, the undersigned finds that during the period in question the claimant had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: Due to mental difficulties, the claimant is limited to performing simple, repetitive non-detailed tasks, where coworker and public contact is causal and superficial, where supervision is direct and non-confrontational, and where changes in the workplace are infrequent and gradually introduced.
>
> 6. From December 14, 2008, the alleged onset date, through May

31, 2011, the claimant was capable of performing past work as a custodian (DOT 382.664-010), medium semiskilled (low level); and roofer/laborer (DOT 421.687-010), heavy and unskilled. This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7. The claimant was not under a disability, as defined in the Social Security Act, at any time from December 14, 2008, the alleged onset date, through May 31, 2011. (20 CFR 404.1520(f)).

[Tr. 12-19].

## II. DISABILITY ELIGIBILITY

This case involves an application for DIB. An individual qualifies for DIB if he or she: (1) is insured for DIB; (2) has not reached the age of retirement; (3) has filed an application for DIB; and (4) is disabled. 42 U.S.C. § 423(a)(1).

"Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). A claimant will only be considered disabled if:

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A); see 20 C.F.R. § 404.1505(a).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

1. If claimant is doing substantial gainful activity, he is not

3

disabled.

> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). The claimant bears the burden of proof at the first four steps. Id. The burden shifts to the Commissioner at step five. Id. At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. Her v. Comm'r of Soc. Sec., 203 F.3d 388, 391 (6th Cir. 1999) (citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987)).

## III. STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 405 (6th Cir. 2009) (citing Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997)). If the ALJ applied the correct legal standards and his findings are supported by substantial evidence in the record, his decision is conclusive and

must be affirmed. 42 U.S.C. § 405(g); Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Cutlip v. Sec'y of Health & Human Servs., 25 F.3d 284, 286 (6th Cir. 1994) (citing Kirk v. Secretary of Health & Human Servs., 667 F.2d 524, 535 (6th Cir. 1981)) (internal citations omitted).

It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. Crisp v. Sec'y of Health & Human Servs., 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." Buxton v. Halter, 246 F.3d 762, 773 (6th Cir. 2001) (quoting Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984) (citing Myers v. Richardson, 471 F.2d 1265 (6th Cir. 1972)).

In addition to reviewing the ALJ's findings to determine whether they were supported by substantial evidence, the Court also reviews the ALJ's decision to determine whether it was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner. See Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004).

On review, the plaintiff "bears the burden of proving his entitlement to benefits." Boyes v. Sec'y. of Health & Human Servs., 46 F.3d 510, 512 (6th Cir. 1994) (citing Halsey v. Richardson, 441 F.2d 1230 (6th Cir. 1971)).

5

## IV. POSITIONS OF THE PARTIES

The Plaintiff argues that the ALJ erred in several respects. First, the Plaintiff contends that he suffers from a psychotic disorder which should have been found to be a severe impairment at step two. [Doc. 21 at 24]. Second, the Plaintiff maintains that the ALJ erred at step three in finding that the Plaintiff did not meet or equal Listing 12.05(B) or (C). [Id. at 20-22]. Lastly, the Plaintiff argues that the ALJ did not properly consider and weigh the medical opinions of consultative examiners Brian Humphreys, Psy.D., Martha Wike, Ph.D., and Jeffrey Summers, M.D. [Id. at 22-26].

The Commissioner responds that the ALJ's step two finding does not warrant remand because the ALJ considered all of the Plaintiff's symptoms at subsequent steps of the evaluation in accordance with agency rules. [Doc. 23 at 3-4]. Additionally, the Commissioner argues that the ALJ's step three finding is likewise supported by substantial evidence where the Plaintiff did not have the requisite IQ scores to meet Listing 12.05(B) or (C). [Id. at 4-7]. Finally, the Commissioner contends that the weight assigned to the challenged medical opinions was appropriate and within the zone of choices offered by the evidence of record. [Id. at 8-15].

## V. ANALYSIS

The Court will address the Plaintiff's allegations of error in turn.

### A. Step Two – Severe Impairment

At step two, the ALJ found that the Plaintiff's borderline intellectual functioning, polysubstance use, bipolar disorder, and anxiety were severe impairments. [Tr. 12]. The Plaintiff argues that he also suffers from a psychotic disorder that the ALJ should have found to be severe. [Doc. 21 at 24]. The Plaintiff points to medical records from Cherokee Health Systems ("Cherokee") which note an impression of a psychotic disorder, not otherwise specified,

6

in July, August, and October 2009. [Tr. 292, 295, 297-98]. In addition, the Plaintiff cites treatment notes that document a complaint of auditory hallucinations [Tr. 300] and a diagnosis of bipolar disorder with psychotic symptoms [Tr. 314-15, 318]. The Commissioner argues that the specific impairments found to be severe at step two are irrelevant because the ALJ properly considered all of the Plaintiff's impairments, both severe and non-severe, at subsequent steps of the evaluation. [Doc. 23 at 3-4].

At step two, "the ALJ must find that the claimant has a severe impairment or impairments" to be found disabled. Farris v. Sec'y of Health & Human Servs., 773 F.2d 85, 88 (6th Cir. 1985). To be severe, an impairment or combination of impairments must "significantly limit[] your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). Step two has been described as "a *de minimis* hurdle" in that an impairment will be considered nonsevere "only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience." Higgs v. Brown, 880 F.2d 860, 862 (6th Cir. 1988) (citing Farris, 773 F.2d at 90).

In this case, the Court finds that the ALJ did not err at step two. While the Plaintiff was initially diagnosed with a psychotic disorder in August 2009, the diagnosis changed in December 2009 to a bipolar disorder. [Tr. 300]. Treatment notes sometimes characterized the disorder with psychotic symptoms. [Tr. 300, 314-15, 318, 328-31]. The ALJ recognized the Plaintiff's bipolar disorder is a severe impairment and did not err in declining to find the associated psychotic symptoms as evidence of a separate impairment. Moreover, the Court notes that the Plaintiff did not list a psychotic disorder in describing the impairments that limited his ability to work. [Tr. 165].

Regardless, "the specific severe impairment noted by the ALJ in [her] step two finding is

7

irrelevant." Hastie v. Colvin, No. 3:13-CV-511-TAV-HBG, 2014 WL 2208942, at *3 (E.D. Tenn. May 28, 2014). The Court of Appeals for the Sixth Circuit has explained that when an ALJ finds some impairments to be severe and continues the sequential evaluation process, as is the case here, it is "legally irrelevant" that other impairments are determined to be nonsevere, because "the ALJ must consider both severe and nonsevere impairments in the subsequent steps." McGlothin v. Comm'r of Soc. Sec., 299 F. App'x 516, 522 (6th Cir. 2008) (citation omitted); see 20 C.F.R. § 404.1545(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe' . . . when we assess your residual functional capacity."). Here, the ALJ continued the sequential evaluation by considering all of the Plaintiff's symptoms in assessing his RFC. [Tr. 15] ("[T]he undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. . . .").

Accordingly, the Court finds that the ALJ did not commit reversible error at step two, and the Plaintiff's argument to the contrary is not well-taken.

### B. Step Three - Listing 12.05

Next, the Plaintiff argues that the ALJ erred at step three when she concluded that the Plaintiff did not meet or equal Listing 12.05(B) Or (C) – Intellectual Disability.

At step three, a claimant may be found disabled if his impairment meets, or medically equals, one of the listings in the Listing of Impairments. 20 C.F.R. § 404.1520(a)(4)(iii). Each listing specifies "the objective medical and other findings needed to satisfy the criteria of that listing." 20 C.F.R. § 404.1525(c). Only when an impairment satisfies all of the listing's criteria will the impairment be found to meet a listed impairment. § 404.1525(d).

8

To meet or equal Listing 12.05, the Plaintiff must provide evidence of the following:

> Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when . . .
>
> B. A valid verbal, performance, or full scale IQ of 59 or less;
>
> OR
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function[.]

20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.05. Accordingly, the Plaintiff must demonstrate (1) significantly subaverage general intellectual functioning, (2) deficits in adaptive functioning, (3) onset before age 22, and (4) satisfy the criteria in paragraphs B and/or C.

The Plaintiff argues that the ALJ erroneously rejected IQ scores the Plaintiff achieved as a child. [Doc. 21 at 20]. The Plaintiff cites to school records he contends demonstrate that he was administered the California Test of Mental Maturity when he was 12-years-old and achieved a verbal IQ score of 63, a non-verbal IQ score of 52, and a total IQ score of 56. [Id. at 3, 20]. In addition, the Plaintiff cites a Psychological Report in which the Plaintiff scored a Verbal IQ of 69 on the Wechsler Intelligence Scale for Children ("WISC") when he was 10-years-old. [Id.].

The ALJ found that while school records showed test scores of 52 and 56, and that these scores "may be IQ scores," they did not satisfy the paragraph B criteria "because this is a *conclusory score* with no WISC (intelligence test for children) to support this score and additional information is illegible." [Tr. 13 (citing Exhibit B22E)] (emphasis in the original). The ALJ continued, "Assuming these scores are valid IQ scores, they are results from testing

9

over 40 years ago.  IQ testing a few years later reveals higher scores with the lowest a verbal IQ of 69." [Id.].  The Plaintiff contends that the ALJ wrongly rejected his IQ scores of 52 and 56 and argues that although the scores were not achieved on the WISC, they are valid IQ scores because the regulations only require that IQ scores be achieved on acceptable standardized test. [Id.].  The Commissioner argues that the record does not contain a valid IQ score of 70 or below to satisfy paragraphs B or C.  [Doc. 23 at 5].

While the Plaintiff is correct that IQ scores achieved on standardized tests other than the WISC are acceptable under Listing 12.05, see 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00, D.6.c., the Court agrees with the Commissioner that the record is void of a valid IQ score.  First, as observed by the ALJ, it is unclear whether the scores of 52 and 56 are IQ scores.  The Plaintiff's school records are largely illegible, and the only indication that the California Test of Mental Maturity may have been administered is "CTMM" appearing in the margins of the Plaintiff's school records.  [Tr. 265].  The school records are not accompanied by any documentation or explanation of the test scores.  Therefore, the Court agrees with the ALJ that if the scores of 52 and 56 are IQ scores, they are conclusory as they fail to provide any insight into the Plaintiff's intellectual functioning.  See 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00, D.6.a. (explaining that "since the results of intelligence tests are only part of the overall assessment, the narrative report that accompanies the test results should comment on whether the IQ scores are considered valid and consistent with the developmental history and the degree of functional limitation").

Second, even assuming that the Plaintiff scored a non-verbal IQ score of 52 and a total IQ score of 56 on the California Test of Mental Maturity, the Court finds the scores, along with the Plaintiff's verbal IQ score of 69 achieved on the WISC when he was 10-years old, are not valid under the listing.  The regulations explain that "IQ test results must [] be sufficiently current for

10

accurate assessment . . . ." 20 C.F.R. Pt. 404, Subpt. P, App. 1, 112.00, D.10. Because IQ test results tend to stabilize by the age of 16, scores of 40 and above obtained between the ages of 7 and 16 are only current for two years. Id. In this case, the Plaintiff's IQ scores are not considered current because they were achieved over 40 years ago when he was 10 and 12-years-old. Although the ALJ's decision fails to provide this same level of reasoning, the decision correctly recognizes that the IQ scores are not valid due to their age.

The Plaintiff additionally argues that the ALJ erred in finding that the Plaintiff did not have the requisite deficits in adaptive functioning. [Doc. 21 at 21-22]. However, because the Plaintiff is unable to satisfy the criteria of paragraphs (B) or (C), the Court need not reach the merits of this argument. Accordingly, the Court finds that the Plaintiff is unable to demonstrate a valid verbal, performance, or full scale IQ required by the listing, and therefore, the ALJ did not err in concluding that the Plaintiff does not meet or equal Listing 12.05(B) or (C).

### C. Consultative Opinions

The Plaintiff also argues that the ALJ did not properly weigh the opinions offered by three different consultative examiners.

Medical opinions from one-time examiners are not due any "special degree of deference." Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994). Nonetheless, their opinions cannot be ignored but must be considered. 20 C.F.R. § 404.1527(b). The weight such opinions are entitled to will depend on the supportability of the opinion, consistency of the opinion with other evidence in the record, specialization of the examining source, and other factors which may support or undermine the opinion. § 404.1527(c)(1)-(6).

The Plaintiff contends that the opinion of Brian R. Humphreys, Psy.D., whose opinion was assigned "great weight" by the ALJ [Tr. 17], is at odds with the Plaintiff's global assessment

11

of functioning ("GAF") scores assigned by Cherokee, the Plaintiff's long term health provider. [Doc. 21 at 24-25]. Dr. Humphreys conducted an examination on March 8, 2010, at which time he concluded that the Plaintiff had mild to moderate limitations in his ability to understand, remember, concentrate and persist adequately in a manual-labor job, interact with others, and adapt adequately in a manual–labor job. [Tr. 309-08]. The ALJ found the opinion to be consistent with other evidence in the record. [Tr. 17].

The Plaintiff counters [Doc. 21 at 25] that Dr. Humphreys' opinion is not consistent with other evidence, namely a GAF score of 45, indicating serious symptoms or serious impairment in social or occupational functioning, Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 34, 4th ed. (revised) 2000, assigned by Cherokee nine days prior to Dr. Humphreys' examination [Tr. 315]. The Plaintiff cites a second GAF score of 40, indicating some impairment in reality testing or communication or major impairment in areas such as family relations, judgment, thinking, or mood, symptoms, Diagnostic and Statistical Manual of Mental Disorders 34, assigned by Cherokee on April 28, 2009. [Tr. 287]. The Plaintiff maintains that these two GAF scores are indicative of the Plaintiff's mental functioning during the time period in question and the scores should have been given greater deference. [Doc. 21 at 23-24]. The Commissioner responds that the ALJ properly considered the GAF scores and because Dr. Humphreys' opinion is consistent with treatment notes from other examiners, substantial evidence supports the ALJ's decision. [Doc. 23 at 10].

Upon review of the entire record, the Court agrees with the ALJ that Dr. Humphreys' opinion is consistent with other evidence. During the course of Plaintiff's mental health treatment with Cherokee, the Plaintiff was routinely seen by Jeffry Jacobs, M.D., who consistently noted that the Plaintiff's symptoms improved when he took his psychotropic

12

medication. [Tr. 16-17, 300, 318, 328, 329, 330, 331]. The ALJ observed, however, that the Plaintiff was not consistent in taking his medication or heeding medical advice. [Tr. 17]. For example, Dr. Jacobs observed on multiple occasions that the Plaintiff's medications provided significant help, but that the Plaintiff would go weeks at a time without a medication refill. [Tr. 318, 328, 329, 331]. More troubling is the Plaintiff's report to Dr. Jacobs in August 2011 that he was compliant with his medication regimen, yet records indicated that the Plaintiff had not picked up his medication since December 2010. [Tr. 332]. "Notably, impairments that are controlled by medication are not disabling." Burney v. Comm'r of Soc. Sec., No. 12-CV-10151, 2013 WL 1289310, at *3 (E.D. Mich. Mar. 28, 2013) (citing Pasco v. Comm'r of Soc. Sec., 137 F. App'x 828, 836 (6th Cir. 2005) ("[T]here is no objective evidence which suggests that the [claimant's] headaches are so severe that they would keep her from working so long as she takes medication.")).

Furthermore, at the time the Plaintiff was assessed a GAF score of 45 in February 2010, the Plaintiff continued to consume large amounts of alcohol and smoke marijuana despite being "strongly encouraged" on several occasions to decrease and discontinue his use. [Tr. 297, 298, 314-15]. Although "[a] GAF score may help an ALJ assess mental RFC, [] it is not raw medical data." Kennedy v. Astrue, 247 F. App'x 761, 766 (6th Cir. 2007). Particularly here, in this case, where the Plaintiff responded well to medication and showed improvement when compliant with Dr. Jacobs' orders, the ALJ properly assigned "little weight to the GAF scores . . . as these scores do not reflect the longitudinal improvement with treatment." [Tr. 18].

The Court also notes that Dr. Humphreys found the Plaintiff's effort during the examination to be "uneven" which is consistent with the observation made by consultative examiner Martha Wike, Ph.D., who noted that the Plaintiff was only "somewhat credible" and he

13

appeared "evasive." [Tr. 17, 305, 308, 342].

The Plaintiff argues that the ALJ's treatment of Dr. Wike's opinion is also flawed. Dr. Wike performed a consultative examination on January 17, 2012, at which time she opined that the Plaintiff was markedly impaired in his ability to interact with others, and was moderately-to-markedly impaired in his ability to understand and remember, sustain attention and concentration, and adapt to change. [Tr. 342]. The ALJ gave "little weight" to Dr. Wike's opinion, explaining that the one-time examiner did not consider the Plaintiff's 15-year work history as a custodian or his ability to pay his own bills, that the examination was conducted after the relevant time period in question, and that the Plaintiff was noted to be evasive. [Tr. 18].

The Plaintiff asserts that Dr. Wike's opinion demonstrates that she, in fact, considered the Plaintiff's work history. [Doc. 21 at 25]. The Plaintiff also cites to his testimony during the administrative hearing in which he alleged he is unable to pay his own bills and requires assistance from his sister. [Id.]. The Plaintiff further maintains that the ALJ's observation that Dr. Wike was only a one-time examiner should have served as a basis to discount Dr. Humphreys' opinion as well. [Id.]. The Commissioner submits that the reasons cited by the ALJ were appropriate and supported by the record, and because the examination was conducted after the time period in question, Dr. Wike's opinion was deserving of less weight than Dr. Humphreys' opinion. [Doc. 23 at 11-12].

The Court agrees with the Plaintiff that Dr. Wike did consider the Plaintiff's work history, including his time as a custodian, [Tr. 340], and the ALJ's observation to the contrary is error. The Court also finds the error was harmless, because the ALJ made other reasonable findings for assigning the opinion little weight. Although the Plaintiff testified he required help with his finances, Dr. Wike found that the Plaintiff was capable of managing his own funds

14

based upon the Plaintiff's report that he had his own bank account when he worked and was able to pay his own bills. [Tr. 343]. The ALJ, not the Court, is charged with weighing the evidence and resolving conflicts therein. Moreover, while neither Dr. Wike or Dr. Humphreys were due any special degree of deference as one-time examiners, "the more consistent an opinion is with the record as a whole, the more weight" the opinion will receive. 20 C.F.R. § 404.1527(c)(4). Here, Dr. Humphreys' opinion was not only well supported by other evidence in the record, it was also rendered during the period under review. Dr. Wike's opinion, on the other hand, was assessed eight months after the relevant time period and nothing within the opinion suggests that her findings relate back to the Plaintiff's ability between December 14, 2008 and May 31, 2011. Cf. Wirth v. Comm'r of Soc. Sec., 87 F. App'x 478, 480 (6th Cir. 2003) (holding that post-dated evidence "must relate back to the claimant's condition prior to the expiration of her date last insured." (citing King v. Sec'y of Health and Human Servs., 896 F.2d 204, 205-06 (6th Cir. 1990)).

Lastly, the Plaintiff contends that the ALJ erred in discounting the opinion of a third consultative examiner, Jeffrey Summers, M.D., who conducted an examination on January 6, 2012, and opined on the Plaintiff's physical limitations. [Tr. 334-37]. Dr. Summers found that the Plaintiff could perform light work, opining that the Plaintiff would have difficulty bending, stooping, kneeling, squatting, crouching, crawling, climbing, and lifting greater than 20 pounds, but could tolerate all other work related activities. [Tr. 336]. The ALJ found the opinion inconsistent with Dr. Summers' mild examination findings and observed that the opinion was largely based on the Plaintiff's subjective complaints rather than the record. [Tr. 18]. The ALJ instead credited the opinion of Reeta Misra, M.D., a non-examining state agency physician, who did not assess any limitations and concluded that the Plaintiff did not suffer from a severe

15

physical impairment. [Id.].

The Plaintiff asserts that Dr. Misra never examined the Plaintiff and based her conclusions on an "unremarkable exam" from October 2010 that she failed to identify with specificity. [Doc. 21 at 22]. The Plaintiff argues that it was error to defer to Dr. Misra's opinion because she was a non-examining physician who relied on unknown records that predated Dr. Summers' exam. [Id. at 22-23]. The Commissioner responds that the ALJ properly weighed the competing opinions. [Doc 23 at 12-13]. The Commissioner argues that Dr. Summers' opinion is too restrictive given his mild findings, and that Dr. Misra based her opinion upon a review of the record. [Id.]. The Commissioner also cites to two examinations conducted by Syed Husnain, M.D., with Cherokee as the October 2010 examinations referred to by Dr. Misra. [Id. at 14].

The Court finds that the ALJ's decision to give more weight to Dr. Misra's opinion is supported by substantial evidence. Although the examining relationship is a relevant factor in weighing medical opinions, 20 C.F.R. § 404.1527(c)(1), "[t]he better explanation a source provides for an opinion," and the more relevant evidence a source gives to support the opinion, "particularly medical signs and laboratory findings," the more weight the opinion will be given. § 404.1527(c)(3). In addition, "the more consistent an opinion is with the record, as a whole, the more weight" the opinion is entitled. § 404.1527(c)(4). Here, Dr. Summers' findings were based upon subjective complaints and the Plaintiff's decrease range of motion of the lumbar spine. [Tr. 336]. Although Dr. Misra did not personally examine the Plaintiff, her opinion was not only based upon a review of Dr. Summers' examination, but she had the benefit of reviewing the record, unlike Dr. Summers. Moreover, the Court finds that Dr. Misra did not rely on "unknown records" in forming her opinion. The Court agrees with the Commissioner that the referenced October 2010 records are those of Dr. Husnain, who noted normal examination

16

findings and no complaints by the Plaintiff other than chronic constipation. [Tr. 320-21, 324]. Finally, the Court observes that the limitations assessed by Dr. Summers, like those of Dr. Wike, post-date the relevant time period in question. While Dr. Misra's opinion also post-dates the period under review, her opinion relates back because it is based upon evidence dated during the relevant time period. [Tr. 355].

Accordingly, the Court finds that the ALJ properly weighed the foregoing opinions, and the Plaintiff's arguments to the contrary are without merit.

## VI.  CONCLUSION

Based upon the foregoing, it is hereby **RECOMMENDED**[1] that the Plaintiff's Motion for Summary Judgment [**Doc. 20**] be **DENIED**, and the Commissioner's Motion for Summary Judgment [**Doc. 22**] be **GRANTED**.

Respectfully submitted,

*Bruce Guyton*
United States Magistrate Judge

---

[1] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Civ. P. 72(b)(2). Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140 (1985). The District Court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive or general. Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370 (6th Cir. 1987).